UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DEBRA SIMPSON,

      Plaintiff,

v.                                                    Case No.:  2:21-cv-89-KCD

COMMSSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## ORDER

Plaintiff Debra Simpson sues under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the Commissioner of Social Security's decision denying her applications for disability insurance benefits and supplemental security income. (Doc. 1.)[1] For the reasons below, the Commissioner is affirmed.

Simpson presses two arguments on appeal. First, she claims substantial evidence does not support the administrative law judge's (ALJ) treatment of four medical source opinions. (Doc. 28 at 18.) Second, she alleges the ALJ failed to adequately develop the record as to her back impairment. (*Id.* at 31.) The Commissioner contends there is no error. (*Id.* at 33.) The procedural history,

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

administrative record, and law are summarized in the joint memorandum (Doc. 28) and are not fully repeated here.

A court's review of a decision by the Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also Wilson v. Barnhart,* 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019). The "threshold for such evidentiary sufficiency is not high." *Id.*

When determining whether the decision is supported by substantial evidence, the court must view the record as a whole considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).

Turning to the record here, the ALJ found Simpson had several severe impairments: depression, anxiety, post-traumatic stress disorder secondary to grief and childhood molestation, attention deficit hyperactivity disorder, chronic uncontrolled hypertension, somatic disorder, binge-eating disorder,

cervical spine spondylosis, stenosis, and disc spurs, mild lumbar degenerative changes, cervical degenerative changes with radiculopathy, and obesity. (Tr. 15-16.) Nevertheless, the ALJ found Simpson had the residual functional capacity ("RFC") to perform light work with these limitations:

> [The claimant has] the ability to occasionally lift and/or carry up to 20 pounds as defined in the regulations, as well as, lift and/or carry 10 pounds frequently. This includes sedentary work as defined in the regulations. The claimant has no limits for sitting in an eight-hour workday. She is capable of standing and/or walking for up to six hours in an eight-hour workday. She has no postural limitations with the exception of no climbing of ladders, ropes, and scaffolds. The claimant is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. There is to be no work with vibratory tools or equipment. In the course of work, the claimant is to have no exposure to extremes of heat, humidity, or cold temperatures. The claimant is able to make judgments regarding work-related decisions, complete tasks in a timely manner and manage routine job stressors. The claimant is able to maintain a routine work schedule and handle changes in non-highly complex job environments. The claimant is able to control their emotions in a work environment. The claimant is able to respond appropriately to the public, supervisors, coworkers, and work situations. The claimant is able to complete detailed instructions consistent with these related mental functions.

(Tr. 20.) After considering the RFC and other evidence, the ALJ ultimately concluded that Simpson is not disabled because she can perform three

unskilled jobs that exist in significant numbers in the national economy. (Tr. 32.)

### A. Medical Opinion Findings

The Court turns first to Simpson's claim that substantial evidence does not support the ALJ's decision to discount several of her proffered medical opinions. In 2017, the Social Security Administration (SSA) revised the rules it uses to evaluate medical opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). The final rules became effective in March 2017. *Id.*; *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022). Because Simpson filed her claims after that date (Tr. 13, 232), the revised regulations apply here.

A medical opinion is "a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions[.]" 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Important for present purpose, not all evidence from a medical source is considered a "medical opinion." For example, because they do not address the claimant's functional abilities and limitations, statements of diagnosis and prognosis alone are not medical opinions. *See Staheli v. Kijakazi*, No. 1:20-CV-00159-JCB, 2021 WL 5495694, at *3 n.37 (D. Utah Nov. 23, 2021); *Pena v. Comm'r of Soc. Sec.*, No. 6:20-CV-2254-LHP, 2022 WL 3042442, at *4 (M.D. Fla. Aug. 2, 2022).

When dealing with a medical opinion, the ALJ must consider its persuasiveness using several factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, which includes (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors." 20 C.F.R. §§ 404.1520c(a) & (c)(1)-(5), 416.920c(a) & (c)(1)-(5). Supportability and consistency "are the most important factors" in determining persuasiveness. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). And because of their importance, the ALJ must explain "how [she] considered the supportability and consistency factors for a medical source's medical opinions." *Id.*

Medical evidence that does not rise to an opinion under the regulations is treated differently. This includes "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [the claimant's] impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513 (a)(3); *see also* 20 C.F.R. § 416.913 (same). The ALJ must consider other medical evidence but need not articulate her thoughts on it. *Dye v. Comm'r of Soc. Sec.*, No. 5:20-CV-459-NPM, 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022).

With these standards in mind, the Court discusses each of the contested medical opinions in turn.

### i. Mr. Belot

Simpson claims substantial evidence does not support the ALJ's conclusion as to the medical opinion of nurse practitioner Max Belot. (Doc. 28 at 18.) But Simpson fails to show that Mr. Belot provided a medical opinion in the first place. She accurately states that Mr. Belot's record includes various symptoms, diagnoses, and clinical observations, but these do not address her functional abilities and limitations. (*Id.* at 19.) Thus, Mr. Belot did not provide a medical opinion.

Mr. Belot's notes are "other medical evidence" though, so the ALJ had to consider them. And this she did, finding they supported Simpson's ability to work. (Tr. 21.) Specifically, she stated that on the day of Simpson's alleged onset, Mr. Belot found Simpson "was alert, oriented, calm, cooperative, forthcoming with organized thinking process, casually groomed, relaxed, and had essentially normal speech." (Tr. 26.) This finding could reasonably support the ALJ's conclusion. Thus, substantial evidence exists as to the ALJ's treatment of Mr. Belot.

### ii. Mr. Bauerle

Simpson makes the same argument about Matthew Bauerle, another nurse practitioner, who wrote that Simpson has a "poor long term prognosis

for being sustained and productive of society." (Doc. 28 at 18.) Mr. Bauerle further noted that Simpson "may be unable to hold full time long term, or even part-time employment short time due to multi-factorial psychiatric disease, which has not responded well to medications." (Tr. 626). The ALJ did not specifically address these conclusions.

But Mr. Bauerle's statements, like Mr. Belot's, are not medical opinions. First, they provide nothing as to Simpson's functional abilities and limitations. That is, they do not describe "the extent to which [Simpson] can perform any particular function in a work setting." *Dye*, 2022 WL 970186, at *4. Equally preclusive, Mr. Bauerle's cursory observations amount to a mere determination that Simpson cannot work. But that is for the ALJ to decide. *Id.* at *5. Put simply, Mr. Bauerle's statements are too conclusory and thus "neither valuable nor persuasive to the issue of [disability]." 20 C.F.R. §§ 404.1520b(c), 416.920b(c).

The conclusory nature of Mr. Bauerle's opinion prevents any explanation from the ALJ. *Id.* ("[W]e will not provide any analysis about how we considered such evidence in our determination or decision."). The ALJ herself recognized this. (Tr. 31 ("The undersigned did not provide articulation about the statements or issues that are inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c) and 416.920b(c).").) Thus, there is no error.

7

### iii.  Ms. Drill

Turning to Barbara Jean Drill, M.S., Simpson argues:

> [Drill] interviewed Ms. Simpson and administered various tests and exercises, resulting in a diagnosis of acute stress disorder, PTSD, ADD, specific learning disabilities in reading and mathematics computation, and language disorder. She further opined that Ms. Simpson requires "specialized accommodations and work environment and protections" such that her prognosis for working in a competitive environment was assessed as poor.

(Doc. 28 at 19 (citing Tr. 735-6).) Ms. Drill's conclusions also do not meet the requirements for a medical opinion. Ms. Drill, a vocational rehabilitation psychologist, seemed to believe that Simpson can sustain *some* work, but she didn't say what this work can or cannot include. The Court wonders what "specialized accommodations and work environment and protections" even means in Simpson's specific employment context. Like the doctor's in *Staheli*, Ms. Drill's opinion "is bereft of any discussion about what Plaintiff can still do despite her impairments." *Staheli*, 2021 WL 5495694, at *4. Thus, like above, her finding is not a medical opinion and the ALJ had no obligation to discuss it. *Id.*

But even if Ms. Drill did give a medical opinion, the ALJ addressed its supportability and consistency. (Tr. 29.) The ALJ discounted Ms. Drill's opinion because, among other things, it was generally unsupported by her other findings. (Tr. 29.) For example, Ms. Drill thought Simpson "presented as

8

not genuine in that her complaints are nearly constant and to a seemingly excessive degree which results in her seeming to be exaggerating them for the purpose of not having to work, not taking responsibility for improvement in her situation, and, possibly trying to work the system." (Tr. 29, 735.)

As for consistency, the ALJ found Ms. Drill's report to be generally inconsistent with objective evidence and the findings of various providers including Mr. Belot, Dr. Derald R. Morris, Dr. Kazi Ahmad, and Ms. Jennifer Joyce. (Tr. 29.) The ALJ also thought Ms. Drill's opinion was generally inconsistent with Simpson's own daily activities which included "living alone, being independent with household chores, driving, watching television, using a phone for social media and games, and going to the pool with friends." (Tr. 30.) Against this record, the Court has little trouble concluding that substantial evidence supports the ALJ's treatment of Ms. Drill.

### iv. Ms. Joyce

Turning lastly to certified Physician's Assistant Jennifer Joyce, she completed a Residual Functional Capacity Questionnaire and concluded that Simpson has extreme limitations in four functional areas and marked limitations in five functional areas. (Tr. 992-94.) The ALJ found Ms. Joyce's opinion to be unsupported by her own objective examinations, which showed:

> [Simpson] was healthy, interested, well groomed, attentive, cooperative, appropriate, had eye contact, had no impairments with her attention or

concentration with distractibility, intact memory and fund of knowledge, adequate judgment and insight, normal speech with perseveration, normal thought process, linear, intact, and goal directed associations, intact thought with obsessive thinking, oriented in all spheres, and a normal, anxious, congruent, and appropriate mood, as more detailed above.

(Tr. 31.) The ALJ identified consistency issues too, finding Ms. Joyce in conflict with Ms. Belot, Dr. Morris, Dr. Ahmad, and Simpson's own high functioning activities of daily living. (Tr. 31.) This led the ALJ to conclude that Ms. Joyce's opinion was unpersuasive. (Tr. 30-31.)

Simpson argues several points as to Ms. Joyce. First, she claims the ALJ did not take Ms. Joyce's opinion into account when considering the state medical consultant's position. (Doc. 28 at 20-21.) If the ALJ had done so, Simpson argues, she may have found the medical consultant less persuasive and therefore less conflicting with Ms. Joyce. (*Id.*) Because the medical consultant gave his opinion before Ms. Joyce, and thus could not rely on her testing, the ALJ was to consider the medical consultant's opinion in light of Ms. Joyce's. 20 C.F.R. § 404.1520c(c)(5) ("When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive."); *see also* 20 C.F.R. § 416.920c(c)(5) (same). Contrary to Simpson's claim, however, the ALJ

showed that she did, in fact, take Ms. Joyce's report into account when considering the state consultants' opinions. (Tr. 28.) She stated:

> The undersigned does not find wholly persuasive the opinions of the state agency reviewing psychologists at initial and reconsideration . . . . [T]he portion of these opinions regarding adapting or managing oneself and being limited to simple, routine tasks . . . are generally inconsistent with the objective findings by Ms. Joyce from late 2019 through present . . . .

(Tr. 28.)

The record makes clear that the ALJ discussed the most important factors, finding they weighed against Ms. Joyce's persuasiveness. (Tr. 30-31.) The ALJ also affirmed that she considered all the relevant evidence in the record. (Tr. 20 ("The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c.").) Thus, there is no error.

Next, Simpson claims the ALJ failed to address whether Ms. Joyce's opinion was consistent with and supported by the results of objective psychological testing. (Doc. 28 at 21-22.) But Simpson does not point to any authority which required the ALJ to articulate how she compared a medical opinion to every other source of evidence in the record. As stated, the ALJ gave her reasoning on the supportability and consistency of Ms. Joyce's opinion. This is all she had to do.

Third, Simpson says that her relationship to Ms. Joyce as a patient "weighs heavily" in her favor. (*Id.* at 22.) This might be true. *See* 20 C.F.R. § 404.1520c(c)(3). But, as with Simpson's first argument, the doctor-patient relationship is just one factor the ALJ had to consider. And she did consider it. (Tr. 20.) Thus, there is no error here either.

Finally, Simpson claims the ALJ largely focused on Simpson's bad days to the exclusion of her good ones, which is "cherry picking" and not permitted. (Doc. 28 at 23.) But as the Commissioner argues, Simpson's cherry-picking argument concedes there are indeed "cherries" in the record. (Doc. 28 at 29 n.16.) That is, there are facts in the record to support the ALJ's decision. If the Commissioner relied on just a couple of supporting details from the record and ignored a host of contrary facts, the Court might be persuaded. But that is not the case here. Rather, the ALJ cites many places in the record that contradict Ms. Joyce's opinion, including Ms. Joyce herself. For example, despite finding Simpson had marked and extreme limitations in concentration and attention (Tr. 23-24), Ms. Joyce routinely reported otherwise in her treatment notes, (Tr. 23-24, 941, 948, 955, 961, 967, 973, 979.) Similarly, Ms. Joyce found that Simpson had extreme limitations in judgment (Tr. 23-24, 998), but reported otherwise on several different occasions (Tr. 30-31, 942, 955, 961, 967, 973, 980, 988.) Against this backdrop, the ALJ was within her discretion to find Ms. Joyce's opinion unsupported.

In sum, substantial evidence exists to support the ALJ's treatment of Ms. Joyce. The Court thus turns to Simpson's final argument: failure to develop the record.

## B. Failure to Develop the Record

Simpson's argument is brief—only one paragraph long with just one sentence devoted to the details of this case—so it is hard to understand what Simpson thinks the ALJ should have done differently to further develop the record. (*Id.* at 31-32.) As best the Court can tell, Simpson believes the ALJ should have ordered a consultative examination to address her capacity for work due to her back impairment.

The ALJ has a basic duty to develop a full and fair record. But that does not relieve the claimant of her burden. "[T]he claimant bears the burden of proving that [s]he is disabled, and consequently, [she] is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). As pertinent here, the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). "The duty is triggered, for example, when there is an ambiguity in the record or when the record is inadequate to allow for proper evaluation of the evidence." *Mishoe v.*

13

*Astrue*, No. 5:08-CV-371-OC-GRJ, 2009 WL 2499073, at *7 (M.D. Fla. Aug. 14, 2009).

Further, "there must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). In evaluating the necessity for a remand, courts are "guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id.* To establish an evidentiary gap in the record, a claimant must "identify what facts could have been submitted that would have changed the outcome." *Correa v. Colvin*, No. 8:15-CV-461-T-TGW, 2016 WL 7334642, at *4 (M.D. Fla. Mar. 18, 2016).

Here, Simpson has not shown that the ALJ had insufficient evidence to make an informed decision. To the contrary, the ALJ relied on medical imaging, physical examination findings, and Dr. Morris's report to arrive at her conclusion. (Tr. 17-18, 22, 25-26, 30.) She found that each of these sources "strongly supports her ability to perform work consistent with the residual functional capacity finding." (Tr. 21-23.) The ALJ also thought any limitations were contradicted by Simpson's high functioning activities of daily living. Finally, Simpson does not show where there is any ambiguity in the record. Thus, the Court finds the ALJ had sufficient evidence to come to her conclusion.

Finally, even if the ALJ failed to develop the record, Simpson makes no showing of prejudice. She does not argue what other outcome-determinative facts could have been found in another consultative examination and the Court will not do so for her. *See Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1149 (11th Cir. 2017) ("[D]istrict courts cannot concoct or resurrect arguments neither made nor advanced by the parties."); *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him."). Thus, the Court agrees with the Commissioner: Simpson failed to show ALJ was required to order a second consultative examination. (Doc. 28 at 32.)

For the reasons above, the Court finds that substantial evidence supports the ALJ's evaluation of the medical opinions in the record and her decision not to order another consultative examination. The Court **AFFIRMS** the Commissioner's decision and directs the Clerk to enter judgment for the Commissioner and against Debra Simpson and close the file.

**ENTERED** in Fort Myers, Florida this October 4, 2022.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record